[Civ. No. 13828. Third Dist. Feb. 4, 1976.]

THOMAS MIDGLEY, a Minor, etc., Plaintiff and Appellant, v.
S. S. KRESGE COMPANY, Defendant and Respondent.

68

COUNSEL

Fields, Klein & Smith and Wallace J. Smith for Plaintiff and Appellant.

Fitzwilliam, Memering, Stumbos & DeMers and Alfred Gawthrop, Jr., for Defendant and Respondent.

## OPINION

**PUGLIA, P. J.**—This appeal presents the perplexing question whether liability for failure to warn of dangerous properties of a product is measured by the doctrine of strict liability in its generally understood sense or, alternatively, by traditional negligence concepts imposing a duty of care requiring warning of danger only when there is actual or constructive knowledge of the danger.

The complaint for damages in this product liability action is framed upon four theories of substantive liability: negligence, express warranty, implied warranty and strict liability. At the conclusion of his case, and without moving to amend his complaint, plaintiff (appellant herein) requested that the trial court limit jury consideration of the case to the theory of strict liability in order to obviate defense reliance on contributory negligence. Ultimately the trial court instructed on strict liability for injury from products defective in manufacture or design but refused plaintiff's proffered instruction that failure to warn of dangerous propensities likewise rendered a product defective.[1] Instead, the trial

[1] The refused instruction states: "A product is also defective if the supplier fails to adequately warn of dangerous conditions or propensities which in the absence of an adequate warning make the product dangerous to the user."

court instructed on failure to warn only in the context of negligence. The jury was instructed that contributory negligence is not a defense to a cause of action in strict liability but that a plaintiff's contributory negligence bars recovery for a defendant's negligence.

Plaintiff contends the trial court's instructional choices created error compelling reversal. For the reasons which follow we have determined that the jury should have been instructed on the theory of failure to warn in the context of strict liability in tort. The omission so to instruct was prejudicial to plaintiff's case and requires reversal.

Plaintiff, Thomas Midgley, was 13 years old when he purchased from defendant Kresge a refracting telescope manufactured in Japan. When purchased the telescope was dismantled, its components in a cardboard box accompanied by a booklet of instructions on assembly, use and maintenance. The box bore the legend "Manufactured in Japan for S. S. Kresge Company . . . ." The telescope itself bore a label "K-Mart" accompanied by the phrase "Quality Guaranteed." Kresge, owner of K-Mart Discount Stores, the retailer, was the only named defendant. The Japanese manufacturer was not a party.

Among the components of the telescope, is a sun filter consisting of a dark lens labeled "Sun." The only instructions or warnings received by plaintiff relative to use of the telescope to view the sun are contained in the instruction booklet which provides: "Sun and moon glasses are deposited in the eyepieces cases; screwed into the eyepiece bottom. Be sure to use sun glass for solar observation and moon glass for moon observation. CAUTION: Please refrain from looking up the sun [*sic*] without attaching the sun glass. Also the sun should not be seen through the finderscope." The instruction book contains no diagramatic or pictorial illustrations of the proper installation of the sun filter. Upon reading the warning, plaintiff knew he should view the sun only through the sun filter. He also knew before purchasing the telescope that it was dangerous to look at the sun with the naked eye.

The telescope eyepiece consists of a hollow cylinder approximately three-quarters inch in length, one inch in diameter and open on each end. Screw threads on the inner aspect of each end are of identical size. The eyepiece lens, of clear glass, can be screwed into either end of the cylinder as may be the sun filter. When so joined together, the circumferences of the sun filter and the cylinder are flush. The eyepiece lens, however, is flanged so that when joined to the cylinder the flange projects beyond the circumference of the cylinder.

In the first two months that he had the telescope, plaintiff used it to view the sun 15 to 20 times, always through the sun filter. In preparing to do so, plaintiff would remove the eyepiece lens and replace it with the sun filter. Properly assembled for sun viewing, the eyepiece lens should remain in place and the sun filter be screwed into the opposite or bottom end of the cylinder. When properly assembled the system is safe for sun viewing. As assembled by plaintiff, however, harmful sunlight could leak around the sun filter into the eye of the viewer. Plaintiff's evidence, including expert testimony, tended to show that in so using the telescope he sustained a solar burn on the retina of his eye, irreparably impairing his vision.

I.

A retailer engaged in the business of distributing goods to the public is strictly liable in tort for personal injuries caused by defects in the products it sells. (*Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 263 [37 Cal.Rptr. 896, 391 P.2d 168].) The retailer's liability is coextensive with that of the manufacturer of the product. (*Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 250 [85 Cal.Rptr. 178, 466 P.2d 722].) The genesis of the rule of strict liability in products cases is found in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]. It is repeated substantially in the same form, with modifications not important here, in section 402A of the Restatement Second of Torts. In comment j to that section (p. 353), it is said: "In order to prevent the product from being unreasonably dangerous, the seller may be required to give direction or warning, on the container, as to its use." In the case of a product with dangerous characteristics not generally known, or, if known, not reasonably expected by a consumer to be found in the product, comment j requires the seller to give warning against the dangers "if [the seller] has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the . . . danger . . . . [¶] [A] product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

Citing Restatement, section 402A, California courts have held that a product faultlessly made may nevertheless be deemed defective within the general strict liability rule if it is unreasonably dangerous to place the product in the hands of a user without adequate warning. (*Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 53 [46 Cal.Rptr. 552];

*Gherna* v. *Ford Motor Co.* (1966) 246 Cal.App.2d 639, 651 [55 Cal.Rptr. 94]; *Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 244-245 [71 Cal.Rptr. 306]; see also *Johnson* v. *Standard Brands Paint Co.* (1969) 274 Cal.App.2d 331, 340 [79 Cal.Rptr. 194].) As a result it has been assumed that liability for failure to warn is subsumed under the doctrine of strict liability for injury caused by defects in product manufacture or design. That assumption, however, has not been universally indulged. In *Oakes* v. *E. I. Du Pont de Nemours & Co., Inc.* (1969) 272 Cal.App.2d 645 [77 Cal.Rptr. 709], this court observed (at pp. 650-651): "The rule of comment j of the Restatement antedates the rule of strict liability and is, as we have shown, carried over by the Restatement into the new law. The rationale of the strict liability rule is that the injured person is helpless to protect himself from the *actually defective product.* It is only reasonable therefore that as between the injured user and the one who places the product on the market the latter should bear the loss. The same rationale would apply to the marketing of a product which contains an ingredient which the manufacturer knows or should know 'by the application of reasonable developed human skill and foresight' is dangerous. But, in the view of this court, that is where the reason for the rule ceases and the rule of 'strict' liability itself should stop. To exact an obligation to warn the user of unknown and unknowable allergies, sensitivities and idiosyn-cracies would be for the courts to recast the manufacturer in the role of an insurer beyond any reasonable application of the rationale expressed above. [Citations.]" (Fn. omitted; italics in original.) In further explica-tion of the rule expressed in comment j, we there said (at p. 650, fn. 4): "A rule imposing an obligation upon a manufacturer (or seller) to give a suitable warning and a rule conditioning liability upon the fact of knowledge or reason to acquire knowledge are rules fixing duties of care. Since violation of a duty of care has always been an element in the definition of negligence, the rules expressed in comment j of the new Restatement, although stated as an adjunct to 'strict' liability are merely well settled rules already a part of the law of negligence." (See also *Christofferson* v. *Kaiser Foundation Hospitals* (1971) 15 Cal.App.3d 75, 79-80 [92 Cal.Rptr. 825, 53 A.L.R.3d 292]; *Dosier* v. *Wilcox-Crittendon Co.* (1975) 45 Cal.App.3d 74, 79-80 [119 Cal.Rptr. 135]; Cal. Products Liability Actions (Bender's Practice Handbook 1970 ed.) § 205.3; 53 A.L.R.3d 239, 244; cf. *Carmichael* v. *Reitz* (1971) 17 Cal.App.3d 958, 988 [95 Cal.Rptr. 381], in which the court, interpreting comment k to section 402A, held that with unavoidably unsafe products the duty to warn is imposed by substantive law and must be discharged if such products are not to be deemed defective or unreasonably dangerous. The product there involved was a prescription drug.)

A serious question has arisen whether the existence of a product defect may in any way be conditioned upon the satisfaction of criteria derived from the substantive law of negligence. After the trial of this case, our Supreme Court rejected the Restatement requirement that a product defect must be shown to be "unreasonably dangerous" to the user or consumer (*Cronin* v. *J. B. E. Olson Corp.* (1972) 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153]). "Unreasonably dangerous" as defined by the Restatement means that the product sold "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." (Rest.2d, § 402A, com. i., p. 352.) The Supreme Court explained in *Cronin* that the "unreasonably dangerous" qualification "burdened the injured plaintiff with proof of an element which rings of negligence" (p. 132), whereas the development of the doctrine of strict liability was intended "to relieve the plaintiff from problems of proof inherent in pursuing negligence [citation] and warranty [citation] remedies, and thereby 'to insure that the costs of injuries resulting from defective products are borne by the manufacturers . . . .' [Citation.]" (*Cronin, supra,* 8 Cal.3d at p. 133.)

As we recognized in *Oakes* v. *E. I. Du Pont de Nemours & Co., Inc., supra,* the prerequisite of actual or constructive knowledge of product dangers as a limitation upon duty to warn thereof engrafts concepts of substantive negligence law onto the element of defect in cases of strict liability for failure to warn. *Oakes* was a pleading case. The complaint alleged that plaintiff contracted a severe systemic skin condition from allergic reaction to chemical ingredients in defendant's weed killer; that substantial numbers of people are allergic to these chemicals; and that defendants failed to give adequate warning thereof. Demurrer to the complaint was sustained because the complaint did not allege that defendants knew or should have known of this effect of its product on allergic people. We affirmed the ensuing judgment of dismissal on the ground that defendants had no obligation "to warn the user of unknown and unknowable allergies, sensitivities and idiosyncracies" (272 Cal.App.2d at p. 651).

We are not called upon to determine in this opinion the extent, if any, to which the *Oakes* holding has been eroded by *Cronin.* It is sufficient for present purposes to point out that *Oakes* does not control the instant case because it is factually dissimilar. In the *Oakes* case, the danger posed by defendants' product was a function of an idiosyncratic physiological reaction shared by only a limited number who might use the product. To

the extent that there remains a valid distinction in the law of strict liability for failure to warn between "known" and "unknowable" dangers, the problems noted in the *Oakes* case survive the re-formulation of strict liability law announced in the *Cronin* decision.

By contrast, the defendant herein marketed a technically complex product intended for use by technically unsophisticated consumers, to be assembled and used by them in accordance with instructions prepared and supplied by the technically knowledgeable supplier. Failure to assemble or use the product in accordance with these directions may well cause physical injury and thus constitutes a potential danger. It begs the obvious to say that the supplier knows or reasonably should know that the directions furnished by him will form the unsophisticated consumer's only guide to assembly and use. ■ Thus a product requiring assembly and use in conformity with the supplier's directions is defective if the supplier fails to warn adequately of conditions and circumstances created by such assembly or use which would render the product dangerous to the user. Therefore, the supplier is strictly liable for injury proximately resulting from composing and furnishing a set of instructions for assembly and use which does not adequately avoid the danger of injury.

It follows that plaintiff was entitled to jury consideration of the adequacy of the instructions for assembly and use of the telescope in the context of strict liability. That right, of course, was contingent upon plaintiff's submission to the court of an instruction properly stating the law. Plaintiff's offered instruction on the subject (see fn. 1, *ante*, p. 69) was rejected. It did not condition the duty to warn on the existence in the defendant of actual or constructive knowledge of danger. As we have held, however, in these circumstances the duty to warn is not conditioned upon such knowledge where the defectiveness of a product depends on the adequacy of instructions furnished by the supplier which are essential to the assembly and use of its product. Nonetheless, as a statement of abstract law, plaintiff's proffered instruction is overbroad. It purports to eliminate knowledge as an element in any case of strict liability for failure to warn rather than being limited to the relatively narrow fact pattern involving a product requiring assembly and use in conformity with the supplier's directions. The question remains, however, whether it was so far inadequate for the particular case that the trial court was justified in refusing it. We hold that it was not. There was no issue of fact at trial that the telescope was indeed a product requiring assembly and use in conformity with the supplier's directions. Thus

plaintiff's proposed instruction in conjunction with undisputed evidence was sufficient as a matter of law to place a relevant and crucial issue before the jury. The trial court erred in rejecting plaintiff's proposed instruction on failure to warn.

■ The jury's consideration of liability for failure to warn was confined to the theory of negligence. The jury was instructed in that regard that plaintiff's contributory negligence would bar recovery for defendant's negligence. As we view the record, the evidence does not exclude the hypothesis that the jury determined that the telescope assembly instructions were inadequate but that plaintiff was contributorily negligent in applying them. Accordingly, there is a reasonable probability that a verdict for plaintiff would have resulted had the erroneously rejected instruction been given. That error was therefore prejudicial and requires reversal. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].)

The trial court instructed that plaintiff had the burden of proving that he was unaware of the claimed product defect. Plaintiff assigns this instruction as error. The trial was held prior to the decision in *Luque* v. *McLean* (1972) 8 Cal.3d 136 [104 Cal.Rptr. 443, 501 P.2d 1163], wherein the Supreme Court disapproved that instruction. This error and other claims of error made by the plaintiff will not arise on retrial and therefore do not require any further consideration.

The judgment is reversed.

Friedman, J., concurred.