[Civ. No. 64978. Second Dist., Div. Three. Sept. 30, 1983.]

SCOTT D. GROLL, Plaintiff and Appellant, v.
SHELL OIL COMPANY, Defendant and Respondent.

## COUNSEL

Jamie Beth Fox and Rosenfield & Silver for Plaintiff and Appellant.

Gary C. Ottoson, Roy G. Weatherup, Robert L. Washburn and Haight, Dickson, Brown & Bonesteel for Defendant and Respondent.

## OPINION

**THOMAS, J.**\*—Scott Groll (appellant) appeals from a motion for nonsuit granted the manufacturer, Shell Oil Company (respondent). We hold that the duty to warn the ultimate consumer, considering the method of sale, repackaging, and distribution rested with the distributor. Judgment affirmed.

### FACTUAL AND PROCEDURAL HISTORY

On October 14, 1976, appellant filed a lawsuit, through his guardian ad litem Richard Groll, wherein he sought damages based on negligence, breach of warranty, and failure to warn. At the time of trial, respondent was the only defendant because appellant had previously settled with Chase Chemical (Chase), the distributor, and Sports, Ltd., the distributor sales company.

At about 12:30 a.m. on October 17, 1975, appellant, then 16 years of age, attempted to light a woodburning fireplace in the bedroom of his residence. After several unsuccessful attempts, he went into the basement to look for lighter fluid. Appellant found a can of Park Ranger Stove and Lantern Fuel (BT-67), read the label on the back,[1] and took it up to his room to light the fireplace.

Appellant testified that he used a cup to transfer the fluid from the can to the logs and some of the fuel could have gotten on his fingers in the process

---

\*Assigned by the Chairperson of the Judicial Council.

[1] In red on the back of the can, at the bottom, appeared the following language: "Danger. Harmful or fatal if swallowed. Contains petroleum distillate. If swallowed, do not induce vomiting, call physician immediately. Extremely flammable. Keep away from heat and open flame."

of pouring it on the logs. As soon as appellant struck a match and put his hand in the entrance of the fireplace, the whole area blew up.

At the trial, appellant called Mr. Ted Lee, vice president and part owner of A. G. Layne, Inc., who testified that his company bought BT-67 in bulk from respondents and sold it in bulk (6,000 gallons minimum) to distributors such as Chase. Chase packaged the BT-67 and sold it to the public. It was his practice in 1975 to give full packets of Shell Safety Data Materials (data sheet), including BT-67,[2] to all of his distributors. Chase began purchasing BT-67 in 1965, and ordered 6,000 gallons two to three times per month. Mr. Lee did not know that Chase was packaging and marketing the BT-67 as a camper stove fuel.

Appellant, also called Mr. Herman Benjamin, president of Chase, who testified that Chase packaged the BT-67 in quarts and gallons, using the "Park Ranger" label which was purchased from another company; the label had been approved by the Consumer Product Safety Commission. Prior to purchasing BT-67, he had a sample analyzed by a chemist.

At the conclusion of appellant's case, respondent made a motion for non-suit on the ground that respondent did not owe, or breach, a duty to appellant. The trial court granted the motion and this appeal followed.

CONTENTIONS

Appellant contends that the trial court erred in granting respondent's motion for nonsuit, because the manufacturer of goods sold in bulk has a duty to warn the distributor and the ultimate consumer.

DISCUSSION

■ In ruling on a motion for nonsuit, the court must give " ' . . . plaintiff['s] evidence all the value to which it is legally entitled' " and cannot grant the motion if there is evidence which "would support a jury verdict in plaintiff's favor." *Campbell* v. *General Motors* (1982) 32 Cal.3d 112, 118 [184 Cal.Rptr. 891, 649 P.2d 224], *Spaid* v. *Cal-Western States Life Ins. Co.* (1982) 130 Cal.App.3d 803, 806 [182 Cal.Rptr. 3]; *Elmore* v.

---

[2]The BT-67 data sheet advised: "Avoid excessive heat. Avoid open flame and spark sources. Avoid splash, spilling. Provide adequate ventilation;" It also warned of a low flash point.

*American Motors Corporation* (1969) 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84].

■ It has long been established that "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]. Likewise, a manufacturer or a supplier of a product is required to give warnings of any dangerous propensities in the product, or in its use, of which he knows, or should know, and which the user of the product would not ordinarily discover. *Crane* v. *Sears Roebuck & Co.* (1963) 218 Cal.App.2d 855, 860 [32 Cal.Rptr. 754]; *Tingey* v. *E. F. Houghton & Co.* (1947) 30 Cal.2d 97, 102 [179 P.2d 807].

■ The California courts have held that a product, though faultlessly made, may nevertheless be deemed defective within the general strict liability rule if it is unreasonably dangerous to place the product in the hands of the user without adequate warnings. *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 349 [157 Cal.Rptr. 142]; *Midgley* v. *S. S. Kresge Company* (1976) 55 Cal.App.3d 67, 71 [127 Cal.Rptr. 217]; *Canifax* v. *Hercules Power Company* (1965) 237 Cal.App.2d 44, 53 [46 Cal.Rptr. 552]; *Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 244-245 [71 Cal.Rptr. 306]; *Johnson* v. *Standard Brand Paint Co.* (1969) 274 Cal.App.2d 331, 340 [79 Cal.Rptr. 194]. Thus BT-67, though faultlessly made, may be rendered defective if inadequate warnings were given.

■ Appellant had the burden of proving that the product was defective and that the defect was a proximate cause of his injuries. *Cavers* v. *Cushman Motor Sales, Inc., supra,* 95 Cal.App.3d 338, 344. Respondent's data sheet warned Chase regarding the dangerous propensities of BT-67 and specifically advised avoiding "excessive heat," "open flame," and "spark sources." Chase warned appellant that BT-67 was "extremely flammable" and should be kept away from "heat" and "open flame[s]." ■ Thus appellant was injured, not as a result of inadequate warnings by respondent or Chase, but rather, as a consequence of his own improper use of the product. After reading the label, appellant should have known that BT-67 should not be used to start a woodburning fire.

Additionally, several cases have extinguished the manufacturer's liability based on an intervening cause. In *Carmichael* v. *Reitz* (1971) 17 Cal.App.3d 958, 994 [95 Cal.Rptr. 381], the court held that a drug manufacturer did not have a duty to warn the ultimate consumer so long as adequate warnings

had been given to the doctor. In the case of *Stevens* v. *Cessna Aircraft Co.* (1981) 115 Cal.App.3d 431, 433 [170 Cal.Rptr. 925], it was determined that the manufacturer of a small airplane did not have a duty to warn the passengers as to the load capacity of the aircraft inasmuch as the pilot had been appropriately warned in the owner's manual. Finally, in the case of *Walker* v. *Stauffer Chemical Corp.* (1971) 19 Cal.App.3d 669, 674 [96 Cal.Rptr. 803], the plaintiff sought damages for injuries sustained in the explosion of drain cleaner, containing sulfuric acid produced by the defendant-manufacturer. The sulfuric acid was compounded, packaged and sold by a codefendant. The court found the defendant-manufacturer not to be liable because the manufacturer did not have *control* over the subsequent compounding, packaging or marketing of the item which caused or contributed to the harm suffered by the plaintiff. Similarly, respondent did not have control over the subsequent packaging and marketing of BT-67.

Appellant asks respondent to bear a tremendous burden if it is to be responsible for warning the ultimate consumer. Cases which have imposed a duty on the manufacturer to warn the ultimate consumer have typically involved tangible items that could be labeled, or sent into the chain of commerce with the manufacturer's instructions, concerning: the proper assembly of a telescope (*Midgley, supra,* 55 Cal.App.3d 67), the danger in turning a golf cart (*Cavers, supra,* 95 Cal.App.3d 338), or the danger of unguarded machine gears on a kelp dryer. (*Rawlings* v. *D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890 [159 Cal Rptr. 119].) Other cases have imposed such a duty when the manufacturer controlled the means to communicate the warning to the consumer, i.e., by packaging or labelling the ultimate product (*Crane, supra,* 218 Cal.App.2d 855.) In the case of *John Norton Farms, Inc.* v. *Todagco* (1981) 124 Cal.App.3d 149, 173 [177 Cal.Rptr. 215] the grower of a dry bulb onion crop sought recovery from the manufacturer and retailer of a herbicide which destroyed the crop following a second application of the herbicide after a heavy rain. Since the manufacturer packaged and labeled the herbicide, the court held that the manufacturer had a duty to provide clear directions and instructions pertaining to its use and was negligent in failing to do so. The case at bar is distinguishable in that respondent did not have the ability to prepare the warning because BT-67 was sold in bulk and subsequently packaged and labeled by Chase.

Since respondent manufactured and sold BT-67 in bulk, its responsibility must be absolved at such time as it provides adequate warnings to the distributor who subsequently packages, labels and markets the product. To hold otherwise, would impose an onerous burden on the bulk sales manufacturer to inspect the subsequent labeling of the packaged product. In addition the manufacturer would have severe enforcement problems if the bulk product purchaser failed to adhere to the recommended warnings.

For the foregoing reasons, we hold that respondent discharged its duty by warning Chase that BT-67 should not be used near an open flame, and thus was not required to warn the ultimate consumer. Judgment affirmed.

Klein, P. J., and Lui, J., concurred.