Plaintiff Barbara H. Purvis appeals from a summary judgment granted in favor of defendant PPG Industries, Inc. We affirm.
Summary judgment was granted to PPG on September 7, 1984. At that time, this was not certified as final under Rule 54(b), Ala.R.Civ.P, and a review of the record fails to disclose that this was requested by Ms. Purvis. At the time the summary judgment was granted, there were other defendants, and there was additional discovery by Ms. Purvis and these other defendants subsequent to the order granting PPG's motion for summary judgment. On July 10, 1985, Ms. Purvis filed a "Motion to Reconsider" PPG's summary judgment based upon certain affidavits and answers to interrogatories which were not before the Court at the time it granted PPG's summary judgment. This motion to reconsider was initially granted. However, upon further consideration, the summary judgment in favor of PPG was "reinstated." Subsequently, this summary judgment was made a final appealable judgment under Rule 54(b), Ala.R.Civ.P.
When ruling on a motion for summary judgment, a trial court may properly consider any material that would be admissible at trial and all evidence of record, as well as material submitted in support of or *Page 716 
in opposition to the motion. Fountain v. Phillips,404 So.2d 614 (Ala. 1981); and this Court's review of the trial court's action in granting summary judgment must be based upon the evidence before the trial court at the time it granted summary judgment. Osborn v. Johns, 468 So.2d 103 (Ala. 1985).
Ms. Purvis in her brief relies heavily on facts that were not before the Court when PPG's motion for summary judgment was granted. These can not be considered by this Court. InWillis v. Ideal Basic Industries, Inc., 484 So.2d 444 (Ala. 1986), the trial court granted summary judgment to both defendants; the record reflected that no counteraffidavits had been submitted by or on behalf of the plaintiff. Later, plaintiff moved to reconsider the order granting the summary judgment, and filed in support of his motion an affidavit in which he apparently factually disputed some matters that were of record at the time the summary judgment order was entered. In discussing the standard of review, this Court wrote:
 " '[T]he propriety of granting motions for summary judgment must be tested by reviewing what the trial court had before it when it granted the motion.' Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113, 116 (Ala. 1978). On a motion for rehearing, the plaintiff must show circumstances which prevented his presenting evidence to counter that offered in support of the summary judgment. Mathis, supra."
484 So.2d at 445. This Court further wrote that Rules 56(e) and 56(f), Ala.R.Civ.P., direct how counteraffidavits are to be filed, when they should be filed, and what should be done if they are not available. Willis did not file anything to create a material issue of fact prior to entry of the summary judgment, and this Court concluded that his belated effort to remedy the situation was insufficient:
 "Only when Willis filed the motion to reconsider did he attempt to develop this issue by offering a supporting affidavit. However, in his motion to reconsider, Willis failed to show any circumstances which prevented his offering this evidence earlier to counter that offered in support of summary judgment. The trial court properly refused to set aside summary judgment on this issue."
484 So.2d at 446. Barnes v. Liberty Mutual Insurance Co.,472 So.2d 1041 (Ala. 1985); Stallings v. Angelica Uniform Co.,388 So.2d 942 (Ala. 1980); Mathis v. Jim Skinner Ford, Inc.,361 So.2d 113 (Ala. 1978); Cooper v. Adams, 295 Ala. 58,322 So.2d 706 (Ala. 1975). See also Moore v. Glover, 501 So.2d 1187 (Ala. 1986). This Court, on substantial precedent, holds that the trial court did not err in failing to set aside the summary judgment based on affidavits filed over 10 months after the entry or upon a deposition filed over a year after the entry, because there was no showing why the plaintiff was prevented from offering this evidence to counter that offered in support of the motion. This Court will limit the scope of its review to the evidence which the trial court had before it when it initially granted PPG's motion for summary judgment.
Ms. Purvis was a part owner and an employee of Budget Dry Cleaning and Coin Laundry ("Budget"). She was poisoned by perchloroethylene, a dry cleaning solvent used in commercial dry cleaning establishments. The evidence showed perchloroethylene results from a chemically controlled reaction of ethylene and chlorine. It is manufactured by a number of companies, including PPG. It cannot be manufactured to possess the chemical and physical properties that make it an effective dry cleaning solvent without its being a potentially hazardous substance under conditions of overexposure or improper use. PPG never made a direct sale to Ms. Purvis or to Budget. Also named as defendants in this suit were Mobile Solvent and Supply, Inc. ("Mobile Solvent"); Coin Laundry and Equipment Company, Inc.; Speed Queen Corporation; Field Industries, Inc.; Ashland Chemical Company; and Dow Chemical Company. In Ms. Purvis's brief she *Page 717 
recites that she "reached a pro tanto settlement with the remaining defendants."
PPG manufactures perchloroethylene ("perc") at its plant in Lake Charles, Louisiana, and ships the product in bulk in tank trucks to distributors such as Field Industries and Mobile Solvent. The first delivery of PPG perc was made to Budget by Mobile Solvent on May 11, 1981. This product was sold in bulk by PPG to Field Industries and was later sold by Field Industries to Mobile Solvent. Field Industries distributed the perc as its own product in its own drums, and its customer was given a choice of whether the drums were labeled or unlabeled. Field Industries delivered perc in unlabeled drums only to customers that it knew were knowledgeable about the chemical properties of perc and could be relied upon to convey safety and warning information to the ultimate users. When PPG delivered in bulk to Field Industries the perc that Field later delivered to Mobile Solvent, PPG had no way of knowing who the ultimate user would be and no way of directly providing product information or warnings to such ultimate user.
Other deliveries of PPG perc were made to Budget by Mobile Solvent on March 10, April 22, and June 25, 1982. These deliveries were of a product that had been sold in bulk by PPG directly to Mobile Solvent. On November 9, 1981, before any of these deliveries were made by Mobile Solvent to Budget, PPG, by letter with attachments, provided Mobile Solvent with all relevant product information and warning labels.[1] The following appeared in this letter: "PPG urges you, and it is your duty to pass along any hazard and safe handling information contained therein to your employees, customers, handlers or users of the above mentioned product."
PPG had no way of ascertaining the identity of the ultimate customers to whom the perc would be sold after being separated into barrels; and, therefore, PPG had no way to convey product information or warnings to the ultimate user except through its distribution. There was no issue raised as to the reliability, reputation, or competence of either Mobile Solvent or Field Industries as distributors of the PPG perc.
The warning labels which PPG provided to Mobile Solvent contained the following warnings: "Vapor Harmful," "Avoid Prolonged Or Repeated Breathing Of Vapors," "Use Only With Adequate Ventilation," "Avoid Contact With Eyes," "Avoid Prolonged Or Repeated Contact With Skin," "Do Not Take Internally," and "Do Not Eat, Drink, Or Smoke In Work Area." First aid instructions were also given.
When viewed most favorably to Ms. Purvis, the only evidence which she presented in opposition to the motion for summary judgment was that she did not receive any warnings and that the warnings given by PPG to its distributors were inadequate because she did not receive them.
Ms. Purvis's first cause of action was brought under Alabama's Extended Manufacturer's Liability Doctrine; she alleged that PPG sold perc in a defective condition unreasonably dangerous to Ms. Purvis as user or consumer of the product, which reached Ms. Purvis without substantial change in the condition in which it was sold. The second cause of action was for breach of a duty to warn Ms. Purvis of the dangerous nature of perc and of the possibility that she would be injured by exposure to it. The third cause of action was for breach of implied warranty (specifically, that the perc was defective, was not properly packaged, and was not safe when put to its intended use).
PPG admits that perc is a potentially hazardous substance under conditions of over exposure or improper use. The only evidence before the court when summary judgment was granted was that perc could not be manufactured to possess the chemical and physical properties that make it an *Page 718 
effective dry cleaning solvent without also possessing chemical and physical properties that make it a potentially hazardous substance. There was nothing before the trial court to indicate that PPG's perc was defective in terms of not being of commercial quality or of not being fit for its intended use.
 "In order to establish liability under the Extended Manufacturers' Liability Doctrine, a plaintiff must show:
 "(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 "(a) the seller is engaged in the business of selling such a product, and "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 855 (Ala. 1981).
Perc is an unavoidably unsafe product. In Stone v. Smith,Kline French Laboratories, 447 So.2d 1301 (Ala. 1984), this Court, adopting comment k to Section 402A of the Restatement(Second) of Torts, (1965) at an unavoidably unsafe product, when properly prepared and accompanied by proper directions and warnings, is not "defective" or "unreasonably dangerous" under Alabama's Extended Manufacturer's Liability Doctrine.[2]
The Stone case involved the drug Thorazine. Comment k to Section 402A has most often been applied in drug cases; however, it has also been applied in cases involving other products: Racer v. Utterman, 629 S.W.2d 387 (Mo.App. 1981) (a surgical drape), appeal dismissed, cert. denied, Racer v.Johnson Johnson, 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42
(1982); Daniels v. Combustion Engineering, Inc., 583 S.W.2d 768
(Tenn.App. 1978) (asbestos installation); McMichael v.American Red Cross, 532 S.W.2d 7 (Ky. 1979) (blood); McKee v.Moore, 648 P.2d 21 (Okla. 1981) (intrauterine device).
Because there are many similarities between this case and these other Section 402A, comment k cases, it seems reasonable to extend comment k to an effective dry cleaning solvent such as perc. Each involves the distribution of a product that, no matter how carefully manufactured or used, can conceivably cause physical injury. Each involves a commercial situation in which the identity of the ultimate user of the product is unknown to the manufacturer. Each involves a professional "middleman" between the manufacturer and the ultimate user, a middleman who is by training, experience, and instruction familiar with the risks inherent in the use of the product. And each involves a manufacturer who has extended adequate warnings regarding product risks to the middleman.
The circumstances of this case are particularly compatible with application of the "unavoidably unsafe" doctrine. Because it was uncontested that the product was unavoidably unsafe, that the PPG perc was properly prepared, and that PPG supplied the perc to Field Industries and Mobile Solvent accompanied by all relevant product information and warnings, the trial judge acted properly in granting summary judgment in favor of PPG as to Ms. Purvis's first cause of action.
There was no error on the part of the trial court in granting summary judgment for PPG under Ms. Purvis's second cause of action, breach of a duty to warn of *Page 719 
the dangerous nature of perc and the possibility that she would be injured by it.
Section 388 of the Restatement provides:
 "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 "(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 "(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 "(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." (Emphasis added.)
PPG conceded the existence of evidence satisfying these first two elements, but established that there was no material issue as to the warning element described in (c). In commentl to Section 388 it is stated that a supplier who exercises reasonable care to inform consumers of dangers of which he is aware is not subject to liability, even though the information never reaches those for whose use the chattel is supplied.
 "l. The supplier's duty is to exercise reasonable care to inform those for whose use the article is supplied of dangers which are peculiarly within his knowledge. If he has done so, he is not subject to liability, even though the information never reaches those for whose use the chattel is supplied. The factors which determine whether the supplier exercises reasonable care by giving this information to third persons through whom the chattel is supplied for the use of others, are stated in Comment n." (Emphasis added.)
Restatement (Second) of Torts, § 388, comment l. Ms. Purvis presented no evidence in response to the motion for summary judgment to suggest that PPG used less than reasonable care in supplying product information to Field Industries or Mobile Solvent. Her only argument was that because she did not actually receive PPG's warnings, a question of fact was created as to the adequacy of PPG's efforts to warn.
Comment n to Section 888 lists three primary factors relevant to a determination of whether reasonable care has been used in the case of third-person warnings: (1) the degree of or propensity for danger that the product poses; (2) the unreasonableness of requiring the manufacturer to choose some other method of warning; and (3) the reliability of the third person to convey the warning to the ultimate user. See, e.g.,Suchomajcz v. Hummell Chemical Co., 524 F.2d 19 (3d Cir. 1975).
A Fifth Circuit Court of Appeals decision states even more clearly the standard to be applied: "to escape liability under clause (b), the supplier must have a reasonable belief that the user will learn of the chattel's dangerous condition through such warning as the supplier may have furnished the third person." Gordon v. Niagara Machine Tool Works, 574 F.2d 1182,1189 (5th Cir. 1978). Other case law is to the same effect. InBorel v. Fibreboard Paper Products Corp., 493 F.2d 1076 (5th Cir. 1973), cert. denied, Fibreboard Paper Products Corp. v.Borel, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), the court held that where an intermediate party is notified of the danger and proceeds deliberately to ignore it and to pass the product on without a warning, the manufacturer is not liable.Id. at 1091. In Jones v. Hittle Service, Inc., 219 Kan. 627,549 P.2d 1383 (1976), the Kansas Supreme Court concluded that the manufacturer of propane gas should not be responsible for explosion injuries where the manufacturer ascertained that the distributor to whom it sold in bulk was adequately trained, was familiar with the properties of the gas and the methods for safely handling it, and was capable of passing that knowledge on to his customers. See also Doss v. Apache Powder Co.,430 F.2d 1317 (5th Cir. 1970); Wilson *Page 720 v. E-Z Flo Chemical Co., 281 N.C. 506, 189 S.E.2d 221 (1972). All of these cases recognize that a manufacturer, such as PPG in this case, ought not be held liable where it has made reasonable efforts to convey warnings and/or product information that, due to circumstances beyond the manufacturer's control, were not passed on to or received by the ultimate user. Where the third party has an independent duty to warn the ultimate user, such as that imposed by a vendor/vendee relationship (Section 388 of the Restatement), the manufacturer is justified in relying upon the third party to perform its duty.
In Adams v. Union Carbide Corp., 737 F.2d 1453 (6th Cir.), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432
(1984), plaintiff claimed that her exposure to toluene diisocyanate (TDI) manufactured by Union Carbide caused respiratory injuries. The evidence reflected that Union Carbide sold TDI to General Motors Corporation, plaintiff's employer, and that GM was warned of the health hazards posed by exposure to TDI. It was undisputed that Union Carbide neither made nor attempted to make any warning to the plaintiff, and GM apparently did not do so either.
On these facts the federal district court entered summary judgment, and the Sixth Circuit affirmed. The Sixth Circuit noted that the application of comment n to Section 388 of theRestatement (Second) of Torts was in issue, and reasoned as follows in support of its decision:
 "While § 388 defines a manufacturer's duty to warn those who may ultimately be exposed to its product, comment n. to the restatement also explains that the duty can be discharged by the manufacturer's reasonable reliance on a third party — in this case GMC — to convey the information supplied by the manufacturer to the ultimate user — in this case employees such as Betty Adams. The fact that GMC repeatedly updated its information about TDI from Union Carbide, coupled with the fact that GMC itself had a duty to its employees to provide them with a safe place to work, supports the inescapable conclusion that it was reasonable for Union Carbide to rely upon GMC to convey the information about the hazardous propensities of TDI to its employees within the context of comment n. of the Restatement."
Id., at 1457. This is precisely the factual background of the claim made by Ms. Purvis against PPG herein.
Ms. Purvis seeks to distinguish the Adams case, and she concludes by asking that this Court ignore the holding of the majority and adopt the reasoning of the dissent. She first argues in her brief:
 "In the Adams case it was not contradicted at all that Union Carbide had provided the information concerning TDI to GMC. In the instant case, it is disputed as to whether or not PPG provided the product label warnings and information to Mobile Solvent prior to the date that Mobile Solvent first sold perc to Purvis which was purchased directly from PPG. . . ."
There was no disputed issue of fact with regard to whether such information had been provided at the time the summary judgment motion was argued and ruled upon — the uncontroverted evidence before the court was that the production information and labels had been provided in November of 1981, long before the 1982 deliveries. Ms. Purvis never contested this evidence until the deposition of Joe White was filed on September 24, 1985, more than a year after the entry of summary judgment. At the time the summary judgment was entered there was no dispute as to whether PPG had provided safety information and product warnings to Mobile Solvent.
Ms. Purvis also tries to distinguish Adams by this argument:
 "Also, the sale of the highly toxic chemical in an arm's length transaction is considerably different from a situation wherein an employer owes a duty to the employee to provide the employee a safe place to work and to warn the employee about potential hazards associated with the work. . . ." *Page 721 
The employer's duty to warn the employee would be no different from the supplier's duty to warn the ultimate user, so there is a distinction without a difference. See Section 388 of theRestatement. The Adams case is directly in point, and this Court adopts the analysis of the majority in that case.
California courts have also recognized that a manufacturer having no relationship with or knowledge of the ultimate user has performed its duty by providing safety information and warnings to a reasonably reliable supplier. In Groll v. ShellOil Co., 148 Cal.App.3d 444, 196 Cal.Rptr. 52 (1983), the plaintiff was injured as a result of an explosion that occurred while he was using stove and lantern fuel (BT-67) to light a fireplace fire. The evidence revealed that defendant A.G. Layne, Inc., bought the fuel in bulk from Shell and sold it in bulk to distributor Chase. The distributor packaged the fuel in cans and sold it to the public. Shell provided the seller with the material safety data sheet (MSDS) on the fuel and the seller passed that along to the distributor. At the close of plaintiff's case the trial court granted Shell's motion for nonsuit on the ground that it did not owe, or breach, any duty to plaintiff.
The court reasoned that Shell, like PPG in this case, could not exercise any control over the product, its distribution, or the warnings given in connection with its distribution, after it sold in bulk to A.G. Layne. To hold that Shell could still be liable despite providing information to Layne would, in the court's view, be improper:
 "Additionally, several cases have extinguished the manufacturer's liability based on an intervening cause. In Carmichael v. Reitz (1971) 17 Cal.App.3d 958, 994, 95 Cal.Rptr. 381, the court held that a drug manufacturer did not have a duty to warn the ultimate consumer so long as adequate warnings had been given to the doctor. In the case of Stephens v. Cessna Aircraft Company (1981) 115 Cal.App.3d 431, 433, 170 Cal.Rptr. 925, it was determined that the manufacturer of a small airplane did not have a duty to warn the passengers as to the load capacity of the aircraft inasmuch as the pilot had been appropriately warned in the owner's manual. Finally, in the case of Walker v. Stauffer Chemical Corporation (1971) 19 Cal.App.3d 669, 674, 96 Cal.Rptr. 803, the plaintiff sought damages for injuries sustained in the explosion of drain cleaner, containing sulfuric acid produced by the defendant-manufacturer. The sulfuric acid was compounded, packaged and sold by a co-defendant. The court found the defendant-manufacturer not to be liable because the manufacturer did not have control over the subsequent compounding, packaging or marketing of the item which caused or contributed to the harm suffered by the plaintiff. Similarly, respondent did not have control over the subsequent packaging and marketing of BT-67.
 "Appellant asks respondent to bear a tremendous burden if it is to be responsible for warning the ultimate consumer. Cases which have imposed a duty on the manufacturer to warn the ultimate consumer have typically involved tangible items that could be labeled, or sent into the chain of commerce with the manufacturer's instructions, concerning: the proper assembly of a telescope (Midgley [v. F.S. Kresge Co., 55 Cal.App.3d 67, 127 Cal.Rptr. 217], supra), the danger in turning a golf cart (Cavers [v. Cushman Motor Sales, Inc., 95 Cal.App.3d 338, 157 Cal.Rptr. 142], supra), or the danger of unguarded machine gears on a kelp dryer (Rawlings v. D.M. Oliver, Inc. (1979) 97 Cal.App.3d 890, 1559 Cal.Rptr. 119). Other cases have imposed such a duty when the manufacturer controlled the means to communicate the warning to the consumer, i.e., by packaging or labelling the ultimate product (Crane [v. Sears Roebuck and Company, 218 Cal.App.2d 855, 32 Cal.Rptr. 754], supra). In the case of John Norton Farms, Inc. v. Todagco (1981) 124 Cal.App.3d 149, 173, 177 Cal.Rptr. 215 the grower of a dry bulb onion crop sought recovery from the manufacturer and retailer of a herbicide which *Page 722 
destroyed the crop following a second application of the herbicide after a heavy rain. Since the manufacturer packaged and labeled the herbicide, the court held that the manufacturer had a duty to provide clear directions and instructions pertaining to its use and was negligent in failing to do so. The case at bar is distinguishable in that respondent did not have the ability to prepare the warning because BT-67 was sold in bulk and subsequently packaged and labeled by Chase.
 "Since respondent manufactured and sold BT-67 in bulk, its responsibility must be absolved at such time as it provides adequate warnings to the distributor who subsequently packages, labels, and markets the product. To hold otherwise, would impose an onerous burden on the bulk sales manufacturer to inspect the subsequent labeling of the packaged product. In addition the manufacturer would have severe enforcement problems if the bulk product purchaser failed to adhere to the recommended warnings.
 "For the foregoing reasons, we hold that respondent discharged its duty by warning Chase that BT-67 should not be used near an open flame, and thus was not required to warn the ultimate consumer. Judgment affirmed." (Emphasis added.)
148 Cal.App.3d at 448-450, 196 Cal.Rptr. at 54-55. This is similar to the instant case, where PPG would have to inspect every drum sold by Field Industries and Mobile Solvent if this Court were to hold that it was not entitled as a matter of law to rely upon Field Industries and Mobile Solvent to pass along product information and warnings. Such an onerous burden is not the intent of the law.
Adams and Groll, and, to a lesser extent, even this Court's decision in Stone, all recognize that the manufacturers of some products have no effective way to convey product information or warnings to the ultimate consumer or user of the product. Whether because of bulk sales, repackaging, or product combinations, these manufacturers must rely upon downstream distributors and suppliers to do this. The law has properly evolved to the point where such reliance is permitted, so long as the manufacturer has a reasonable basis to believe that the distributor will pass along the product information or warnings. There was no issue before the trial court at the time summary judgment was entered as to the adequacy of the PPG product information and warnings, nor was there any issue as to whether Field Industries and Mobile Solvent were reputable distributors upon which PPG was entitled to rely.
The summary judgment was also proper as to the third cause of action, breach of an implied warranty. There was no evidence that the pere was defective. There was no evidence that the perc, when delivered to Field Industries or Mobile Solvent by PPG, was improperly packaged. The evidence was undisputed that proper warnings were given by PPG to Field Industries and Mobile Solvent prior to the sale of PPG perc by Mobile Solvent to Budget. Perc is an unavoidably unsafe product; however, there was no evidence that if all appropriate safety precautions are taken perc is unsafe when put to its intended use.
The action of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] Perchloroethylene Bulletin # 35C; Material Safety Data Sheet ("MSDS") # 35C; Perchlor Drum label; Perkare Sales Bulletin # 35D; Material Safety Data Sheet ("MSDS") # 35D; Perkare Drum label; and Bulk Handling Solvents Manual.
[2] Comment k reads as follows:
 Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. . . . Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."