[Civ. No. 11778. Third Dist. May 8, 1969.]

*GEORGE A. OAKES, Plaintiff and Appellant, v. E. I. DU PONT DE NEMOURS & COMPANY, INC., Defendant and Respondent.

*Reporter's Note: This case was previously entitled, ''Oakes v. Geigy Agricultural Chemicals.''

Burton J. Goldstein, P. M. Barceloux, Goldstein, Barceloux & Goldstein, Ralph Golub and Albert E. Levy for Plaintiff and Appellant.

Price, Burness & Price and R. E. Burness for Defendant and Respondent.

PIERCE, P. J.—Plaintiff appeals from a judgment in favor of defendant E. I. Du Pont de Nemours & Company, Inc. (Du Pont) entered July 14, 1967, after no further amendments were made to the complaint to which an eighth demurrer was sustained with leave to amend. The action below was initiated by plaintiff August 31, 1962, when he filed a complaint seeking to recover damages from the respective manufacturers and distributor of three weed-killing chemical products, the use of which by plaintiff allegedly resulted in a severe systemic skin condition. That skin condition was said to be due to an allergy to an ingredient in the weed killer. Plaintiff did not allege that defendant knew or should have

known of this possible effect of the use of its product upon allergic people. Defendant's demurrer had specifically pointed out plaintiff's failure so to allege knowledge. The order sustaining the demurrer had been granted with leave to amend. Plaintiff refused to do so. Under the circumstances of this case, such knowledge or a reason to know by Du Pont was a condition to its liability. The judgment, therefore, must be affirmed.

We will not set forth at length the peregrinations by which plaintiff who started out with a cause of action sounding in negligence ended up with an attempted cause of action against Du Pont based upon "strict" liability. During the period of five years this litigation has been pending many demurrers to complaints, amended complaints, amendments to amended complaints, etc., were sustained. Somewhere along the route plaintiff's theory of negligence was abandoned and his cause of action thereon was dismissed.[1] Plaintiff's briefs give us only inadequate clues to the essential facts pleaded in the ultimate pleading. We have managed to piece them together from the clerk's transcript.[2]

Allegations may be summarized as follows: (1) That defendant's product, sold to be applied by humans to weeds in the form of a weed killing spray, contained chemicals which are "inherently dangerous, poisonous, and toxic to human beings"; (2) that users would not expect such products to contain ingredients which would cause recurring, disabling (apparently) permanent skin conditions, and that no warning was given of such risk from repeated "and/or other uses"; (3) that substantial numbers of people are allergic to said chemicals, and are unaware of this allergy; (4) that the

---

[1]We know this because respondent's brief so advises us and because plaintiff's counsel at oral argument conceded it to be true. Plaintiff's opening brief indirectly (and no doubt inadvertently) misled us to a contrary belief. That brief was devoted substantially to an incorporation by reference of the argument in the trial court. It referred us to the following: "Plaintiff brings this action against defendant DuPont in two theories. . . .

"The first theory is that defendant negligently failed to warn of the latent dangerous quality of the chemical product. . . ."

[2]" . . . It is not the province of a reviewing court to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to the appeal." (*Tesseyman* v. *Fisher* (1952) 113 Cal.App.2d 404, 407 [248 P.2d 471] (hear. den.); *Leming* v. *Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 356 [282 P.2d 23, 51 A.L.R. 2d 107].) "[A] brief . . . grossly inadequate merits animadversion and violates the rules of appeal procedure." (*Garter* v. *Metzdrof Associates* (1963) 217 Cal.App.2d 812, 818 [32 Cal.Rptr. 113].)

60-square-inch product label contains a less than 2-square-inch warning: "Caution! May cause irritation of eyes, nose, throat, and skin. Avoid breathing dust or spray mist. Avoid contact with skin, eyes and clothing"; (5) that plaintiff in the course and scope of his employment used the product to spray weeds "in the same manner as heretofore described, and came in contact with . . . [the] chemicals either by inhalation or by skin exposure, or both." As stated, a demurrer both general and special was filed. Among other grounds for special demurrer it was pleaded that the pleading was "ambiguous," "unintelligible" and "uncertain." In pointing out the basis of these specifications it was stated: "there is no information set forth in the pleading . . . that the defendant Du Pont had any knowledge to put them on notice that at any time the 'type of reaction sustained by the plaintiff herein,' whatever that may be, would be caused to a large percentage of the users of the product."

### Strict Liability Generally

■ ". . . A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].) The scope of the doctrine has been expanded by acceptance of section 402A of 2 Restatement Second of Torts, Special Liability of Seller of Product for Physical Harm to User or Consumer (p. 347). That section defines the products encompassed within the doctrine to include those which "although faultlessly made, may nevertheless be deemed 'defective' under the rule and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no [suitable] warning is given." (*Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 53 [46 Cal.Rptr. 552].)

Comment i (*op. cit., supra,* p. 352) defines unreasonably dangerous to mean that "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." (See *Simmons* v. *Rhodes & Jamieson, Ltd.* (1956) 46 Cal.2d 190, 194 [293 P.2d 26], where recovery was denied an

unwarned plaintiff who suffered burns caused by contact to quicklime in cement; also see *Love* v. *Wolf* (1964) 226 Cal. App.2d 378, 402 [38 Cal.Rptr. 183] (hear. den.).)

Comment j (*op. cit., supra,* p. 353) provides: "In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. . . . Where . . . the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, *if he has knowledge, or* by the application of reasonable, developed human skill and foresight *should have knowledge, of the presence of the ingredient and the danger. . . .*

 "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." (Italics ours.) (Op. cit., *supra,* p. 353; *Harris* v. *Belton* (1968) 258 Cal.App.2d 595, 608 [65 Cal.Rptr. 808]; see also Witkin, Summary of Cal. Law (1967 Supp.) Torts, § 388-0, pp. 616-617.)

 Substantial authority supports the rule that a manufacturer or supplier is entitled to expect normal use of his product, and where the product is used in another manner, or where a specific manner of use or caution is prescribed but not complied with, no liability will attach. (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 64; *Magee* v. *Wyeth Laboratories, Inc.* (1963) 214 Cal.App.2d 340, 350-352 [29 Cal.Rptr. 322], and authorities cited therein; *Erickson* v. *Sears, Roebuck & Co.* (1966) 240 Cal.App.2d 793, 799-800 [50 Cal.Rptr. 143]; Prosser, *Strict Liability to the Consumer in California* (Nov. 1966) 18 Hastings L.J. 9, 22-26, 36-38; 13 A.L.R.3d 1057; 2 Rest.2d Torts, § 402A, com. h, pp. 351-352.)

Plaintiff urges that a warning which does not warn of the extent of injury possible if its cautionary advice is not followed is an inadequate warning, and thus no warning at all. His position is that a warning that "irritation" may result from contact with or inhalation of the product does not insulate the manufacturer from liability where the result of such contact or inhalation is more severe than just "irritation."

We do not reach that question on this appeal.[3]

### Knowledge as a Factor in the Obligation to Warn

The rule of the new Restatement, it has been noted, requires a warning only when the manufacturer knows or should know there is a special danger. (2 Rest.2d Torts, § 402A, com. j.) Both parties have cited *Crane* v. *Sears, Roebuck & Co., supra,* 218 Cal.App.2d 855. *Crane* was not a pleading case. An instruction approved recited: " 'A manufacturer or supplier of a product must give warning of any dangerous propensity of an article produced or sold by him inherent in the product or in its use of which *he knows or should know,* and which the user of the product would not ordinarily discover. . . .' " (Italics ours.) (P. 865.) Quoting *Proctor & Gamble Mfg. Co.* v. *Superior Court* (1954) 124 Cal.App.2d 157, 162 [268 P.2d 199], the court in *Crane* says (at p. 861): "It is settled that if a manufacturer knows or should know that an article sold by him is dangerous he must give appropriate warning to the user of a danger which he ordinarily would not discover. [Citations.]' "

The rule of comment j of the Restatement antedates the rule of strict liability and is, as we have shown, carried over by the Restatement into the new law.[4] ■ The rationale of the strict liability rule is that the injured person is helpless to

---

[3]It is to be noted that the manufacturer *had* warned: "Avoid breathing . . . spray mist. Avoid contact with skin, eyes and clothing." That was a warning which, if followed, would have made the use of the product safe. By his own allegation that he had come in contact "either by inhalation or by skin exposure or both" plaintiff averred *he had not heeded that warning.* It could reasonably be argued that plaintiff is demanding an extended application of "strict liability" to a guarantee against any and all harm—even one which the seller had warned against. *Crane* v. *Sears, Roebuck & Co.* (1963) 218 Cal.App.2d 855 [32 Cal.Rptr. 754], cited by plaintiff, does not support that position. There a product which was combustible had been sold with a warning it was inflammable. The court held that was not enough. The distinguishing difference between that case and this one is that here the warning, if heeded, would have made use of the product safe. The warning given in *Crane* did not. *Crane* upheld an instruction containing this language (p. 860): "The warning should be such that if followed would make the product safe for users." It would seem quite a substantial extension of the *strict* liability rule to permit a plaintiff to recover where his injuries would not have occurred had he heeded the warning.

[4]A rule imposing an obligation upon a manufacturer (or seller) to give a suitable warning and a rule conditioning liability upon the fact of knowledge or reason to acquire knowledge are rules fixing duties of care. Since violation of a duty of care has always been an element in the definition of negligence, the rules expressed in comment j of the new Restatement, although stated as an adjunct to "strict" liability are merely well settled rules already a part of the law of negligence.

protect himself from the *actually defective product*. It is only reasonable therefore that as between the injured user and the one who places the product on the market the latter should bear the loss. ■ The same rationale would apply to the marketing of a product which contains an ingredient which the manufacturer knows or should know ''by the application of reasonable developed human skill and foresight'' is dangerous. But, in the view of this court, that is where the reason for the rule ceases and the rule of ''strict'' liability itself should stop. To exact an obligation to warn the user of unknown and unknowable allergies, sensitivities and idiosyncracies would be for the courts to recast the manufacturer in the role of an insurer beyond any reasonable application of the rationale expressed above. (See *Harris* v. *Belton, supra,* 258 Cal.App.2d pp. 608-609; *Cudmore* v. *Richardson-Merrell, Inc.* (Tex. Civ. App. 1965) 398 S.W.2d 640, 644, cert. den. 385 U.S. 1003 [17 L.Ed.2d 542, 87 S.Ct. 705]; *Howard* v. *Avon Products, Inc.* (1964) 155 Colo. 444 [395 P.2d 1007, 1010-1011]; *Esborg* v. *Bailey Drug Co.* (1963) 61 Wn.2d 347 [378 P.2d 298, 304-305]; *Lartigue* v. *R. J. Reynolds Tobacco Co.* (5th Cir. 1963) 317 F.2d 19, 36-37, cert. den. 375 U.S. 865 [11 L.Ed. 2d 92, 84 S.Ct. 137]; *Ross* v. *Philip Morris & Co.* (8th Cir. 1964) 328 F.2d 3, 12-14.

### *Effect of Plaintiff's Failure to Allege Knowledge*

■ Knowledge, actual or constructive, being a necessary element to the tort liability contended, both pleading and proof of that element were plaintiff's burden. Without it no cause of action was stated and the complaint is defective. (Code Civ. Proc., § 425; 2 Witkin, Cal. Procedure (1954) Pleading, § 161, p. 1139.) The general rule is that allegations will be liberally construed ''with a view to substantial justice between the parties.'' (Code Civ. Proc., § 452; Witkin, *op. cit., supra,* § 209, p. 1187.) Plaintiff argues the rule last cited should be applied here. It is urged that defendant's knowledge of the existence of the alleged allergy to substantial numbers of people should be implied. But under the circumstances here courts do not imply allegations to furnish necessary unpleaded allegations of a cause of action.

''The purpose of a demurrer is to point out a defect in the complaint, and the normal effect of sustaining it is merely to require the plaintiff to amend and eliminate the defect. Hence, decisions which refer to the 'familiar rule' that 'the

pleader has stated his case as favorably as possible,' and that 'all ambiguities therein must be resolved against the pleader' will usually be found to involve the following: (1) a defective complaint; (2) the defect pointed out by demurrer; (3) demurrer sustained with leave to amend; (4) plaintiff unwilling or unable to remove the defect. These cases establish the rule that, on an appeal by the plaintiff, the complaint will be construed against him.'' (Witkin, *op, cit., supra,* § 213, pp. 1191-1192, and cases cited.) In *Straughter* v. *Safety Sav. & Loan Assn.* (1966) 244 Cal.App.2d 159, it is stated on page 162 [52 Cal.Rptr. 871]: "It is to be noted that plaintiff elected not to amend the complaint after having been given an opportunity to amend it. 'When a plaintiff is given the opportunity to amend and elects not to do so, the presumption is that he has stated as strong a case as he can. In such a situation, strict construction is required.' (*Vaughn* v. *Certified Life Ins. Co.,* 238 Cal.App.2d 177, 180 [47 Cal.Rptr. 619].) Where, as in the present case, the demurrer was sustained on all grounds (general and special) specified therein, 'if the complaint is objectionable on any ground, the judgment of dismissal must be affirmed.' (*Ibid.*) "

That language is apposite to this appeal.

Judgment is affirmed.

Friedman, J., and Janes, J., concurred.

A petition for a rehearing was denied June 4, 1969, and appellant's petition for a hearing by the Supreme Court was denied August 6, 1969. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.