[No. C012895. Third Dist. Mar. 12, 1993.]

MICHAEL SCHWOERER et al., Plaintiffs and Appellants, v.
UNION OIL COMPANY et al., Defendants and Respondents.

COUNSEL

Byron C. Foster for Plaintiffs and Appellants.

Landels, Ripley & Diamond, John F. Barg, Sanford Svetcov, Mayall, Hurley, Knutsen, Smith & Green, C. D. Knutsen, Joyce E. Shigekawa, Porter, Scott, Weibert & Delehunt, Craig A. Caldwell and Jeffrey S. Nelson for Defendants and Respondents.

OPINION

**PUGLIA, P. J.**—Plaintiff Michael Schwoerer (plaintiff) appeals from a judgment of dismissal entered after the trial court granted summary judgment in favor of defendants Union Oil Company of California (Union), Ashland Chemical, Inc. (Ashland), E. R. Vine & Co. (Vine), and Ebbetts Pass Gas Service (Ebbetts).[1] Plaintiff's action is based on injuries allegedly caused by inhalation of and dermal contact with a solvent manufactured and/or distributed by defendants. Plaintiff alleges that as a result of his exposure to the solvent, he now suffers from multiple physical ailments, including permanent liver damage.

As against the defendants involved in this appeal, plaintiff's complaint pleads two legal theories of liability: strict liability and breach of warranty.[2] The complaint alleges several distinct acts upon which liablity is predicated but the summary judgment proceedings focused on the claim defendants failed to provide adequate warnings of the dangers posed by use of their product.

On appeal, plaintiff argues there is a triable issue of fact concerning adequacy of the warnings provided by defendants with regard to the potential risks to health associated with unprotected exposure to the solvent. We

[1] Plaintiffs Michael and Carol Schwoerer are husband and wife and are both parties to this appeal. Wife seeks relief in the underlying action for loss of consortium derivative upon husband's cause of action for personal injury. Since the summary judgment proceedings focused exclusively on husband's cause of action, all references in our discussion to "plaintiff" refer to husband, Michael Schwoerer.

[2] Union and Ebbetts are named defendants in the complaint as are several other defendants not parties to this appeal. The complaint also names Does 1 through 20. In addition to strict liability and breach of warranty, the complaint pleads negligence as a third theory of liability. The negligence count refers to two named defendants who are not parties to this appeal and Does 1 through 10. Ashland and Vine were served as Does 13 and 14, respectively. At best, the complaint is uncertain as to whether negligence is alleged against the defendants who are parties to this appeal. Since the issues in this appeal are common to all three counts, for our purposes, the uncertainty is not important.

agree. Our review of the record indicates defendants did not meet their burden of establishing the warnings they provided are adequate as a matter of law. Furthermore, defendants have not shown a misuse of this product by plaintiff such that will relieve them of liability as a matter of law. We shall therefore reverse the judgment.

For purposes of this appeal defendants do not challenge plaintiff's claim he was injured as a result of inhalation of and dermal contact with a solvent manufactured and/or distributed by defendants.[3] The solvent, known as Stoddard's Solvent, was manufactured independently by Union and by Ashland and sold independently by them to Vine in bulk quantities. Vine resold the solvent in bulk to Ebbetts, which repackaged and distributed the solvent in 55-gallon drums. Plaintiff's employer, Sierra Contractors (Sierra), purchased the solvent from Ebbetts.

Both Union and Ashland provided Vine with "Material Safety Data Sheets" (MSDS) containing warnings with regard to use of the solvent and the possibility of physical injury from inhalation of and dermal exposure to the solvent. Vine distributed the safety warnings to Ebbetts which passed them along to Sierra.

The MSDS distributed by Union provided the following pertinent instructions and warnings:

"Section II—EMERGENCY AND FIRST AID PROCEDURES:

"[S]kin Contact [—] If this product comes in contact with the skin, wash with soap and large quantities of water. Seek medical attention if irritation from contact persists.

"Inhalation [—] If breathing difficulties, dizziness, or lightheadedness occur when working in areas with high vapor concentrations, victim should seek air free of vapors. If breathing stops, begin artificial respiration and seek immediate medical attention. . . .

"Section III—PHYSIOLOGICAL EFFECTS AND HEALTH INFORMATION

"[S]kin Effects [—] This product may cause skin irritation upon prolonged or repeated contact.

---

[3]In granting summary judgment the trial court accepted plaintiff's claim his liver damage was caused by exposure to the solvent. For purposes of this appeal, the parties agree causation is not in dispute. Accordingly, for our purposes, we accept as true plaintiff's claim with regard to the cause of his liver damage.

"Systemic effects [—] Various studies have shown a possible association with exposure to this product and the following:

"Respiratory tract irritation . . .

"Central nervous system depression in high concentrations . . . .

"Section IV—SPECIAL PROTECTION INFORMATION

"Respiratory Protection (Specify Type) [—] The use of respiratory protection depends upon vapor concentration above the time-weighted TLV; use a NIOSH approved cartridge respirator or gas mask. . . .

"[P]rotective Gloves [—] The use of impermeable gloves is advised to prevent skin irritation in sensitive individuals. . . .

"Other Protective Equipment [—] Impermeable aprons are advised when working with this product. The availability of eye washes and safety showers in work areas is recommended."

The MSDS distributed by Ashland contained similar pertinent instructions and warnings:

"Section V-HEALTH HAZARD DATA

"[E]FFECTS OF ACUTE OVEREXPOSURE; FOR PRODUCT

"[S]KIN—PROLONGED OR REPEATED CONTACT CAN CAUSE MODERATE IRRITATION, DEFATTING, DERMATITIS.

"BREATHING—EXCESSIVE INHALATION OF VAPORS CAN CAUSE NASAL AND RESPIRATORY IRRITATION, CENTRAL NERVOUS SYSTEM EFFECTS INCLUDING DIZZINESS, WEAKNESS, FATIGUE, NAUSEA, HEADACHE AND POSSIBLE UNCONSCIOUSNESS, AND EVEN ASPHYXIATION.

"[F]IRST AID:

"IF ON SKIN; THOROUGHLY WASH EXPOSED AREA WITH SOAP AND WATER. REMOVE CONTAMINATED CLOTHING. LAUNDER CONTAMINATED CLOTHING BEFORE RE-USE. . . .

"[P]RIMARY ROUTE(S) OF ENTRY: [¶] INHALATION, SKIN CONTACT . . .

"EFFECTS OF CHRONIC OVEREXPOSURE; FOR PRODUCT [¶] OVEREXPOSURE TO THIS MATERIAL (OR ITS COMPONENTS) HAS BEEN SUGGESTED AS A

CAUSE OF THE FOLLOWING EFFECTS IN HUMANS . . . CENTRAL NERVOUS SYSTEM EFFECTS . . . ."

"[S]ECTION VIII-PROTECTIVE EQUIPMENT TO BE USED

"RESPIRATORY PROTECTION; IF WORKPLACE EXPOSURE LIMIT(S) OF PRODUCT OR ANY COMPONENT IS EXCEEDED . . . A NIOSH/MSHA APPROVED AIR SUPPLIED RESPIRATOR IS ADVISED IN ABSENCE OF PROPER ENVIRONMENTAL CONTROL. . . . ENGINEERING OR ADMINISTRATIVE CONTROLS SHOULD BE IMPLEMENTED TO REDUCE EXPOSURE.

"VENTILATION: PROVIDE SUFFICIENT MECHANICAL (GENERAL AND/OR LOCAL EXHAUST) VENTILATION TO MAINTAIN EXPOSURE BELOW TLV(S).

"PROTECTIVE GLOVES: WEAR RESISTANT GLOVES SUCH AS . . . NITRILE RUBBER . . . .

"[O]THER PROTECTIVE EQUIPMENT: TO PREVENT REPEATED OR PROLONGED SKIN CONTACT, WEAR IMPERVIOUS CLOTHING AND BOOTS."

Plaintiff came into contact with the solvent when he was employed by Sierra from February 1986 through April 1987. During a part of that time, plaintiff was a mechanic on a boring machine used in cutting a water conduit tunnel. For six months, plaintiff worked with the solvent inside the tunnel. Plaintiff complained to his supervisor of the lack of ventilation and the need for a respirator, but plaintiff's supervisor dismissed plaintiff's concerns.

During the remainder of the period of exposure, plaintiff worked in a shop cleaning machine parts with the solvent. Plaintiff worked over an open container of the solvent, and breathed the fumes. His work required him to dip machine parts into the solvent. Plaintiff worked up to his elbows in the solvent, without gloves or other protective equipment. His clothes would become saturated with the solvent. Plaintiff requested his employer provide him with impermeable gloves and other materials to lessen his exposure to the solvent. These requests were disregarded, with plaintiff's supervisor suggesting that at most dermal contact with the solvent "might dry out [the] skin, but it would not harm [plaintiff]." Plaintiff's employer never provided him with a copy of the MSDS and plaintiff's requests to see the MSDS were ignored.

On April 3, 1987, as plaintiff was working with the solvent he became weak and lightheaded. When he tried to stand up his legs buckled. He was later diagnosed as suffering from chronic liver failure.

Plaintiff commenced this action for personal injury. As indicated, his complaint alleges legal theories against these defendants sounding in strict liability and breach of warranty. After they answered the complaint, defendants moved for summary judgment on the basis the warnings provided were adequate as a matter of law and plaintiff's misuse of the product and disregard of the safety warnings relieved defendants as a matter of law of any responsibility for plaintiff's injuries. The trial court granted summary judgment. Plaintiff appeals.

I

■ "Summary judgment is appropriate only if the evidence shows there is no triable issue of any material fact, and that the moving party is entitled to judgment as a matter of law. The trial court's obligation in ruling on a summary judgment motion is to determine whether issues of fact exist, not to decide the merits of the issues themselves. When making that determination, the trial court must strictly construe the affidavits of the moving party, and liberally construe those of the opponent. [Citation.] Any doubts about granting the motion should be resolved in favor of the opponent of the motion. [Citation.]" (*Jackson* v. *Deft, Inc.* (1990) 223 Cal.App.3d 1305, 1313 [273 Cal.Rptr. 214].)

■ On appeal, we confine our review to the facts presented to the trial court. We independently review the record to determine whether the moving party is entitled to judgment as a matter of law. (*Brooks* v. *Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1618-1619 [264 Cal.Rptr. 756].)

In granting summary judgment, the trial court commented: "[D]efendants have shown by uncontroverted evidence that material safety data sheets (MSDS) were given to each successive dealer or user of the product and by Ebbetts . . . to Sierra . . . with warning labels on the containers. A seller who gives proper warnings to his purchaser is not liable to those whom the purchaser allows to use the product. A manufacturer or distributor of a product cannot be obligated to warn a user of the product of unknown or unknowable effects that might result from gross misuse of the product. The evidence in this case is uncontroverted that Plaintiff used the product in violation and disregard of all warnings and directions for use."[4]

Plaintiff concedes that where *adequate* warnings have been passed along from manufacturer or seller to the ultimate consumer, there can be no

---

[4]Defendants do not claim on appeal, nor did they in the trial court, that liver damage was an unknown or unknowable consequence of unprotected exposure to the solvent.

liability. (See *Persons* v. *Salomon North America, Inc.* (1990) 217 Cal.App.3d 168, 178 [265 Cal.Rptr. 773].) Plaintiff does dispute however the finding implicit in the trial court's ruling that the MSDS warnings were adequate as a matter of law.[5]

## II

The principle issue as framed by the summary judgment proceedings and reiterated on appeal is whether the warnings given were adequate as a matter of law. "Under California law, a product may be defective because of the absence of an adequate warning of the dangers inherent in its use." (*Jackson* v. *Deft, Inc., supra,* 223 Cal.App.3d at p. 1320.) "Even though the product is flawlessly designed and manufactured, it may be found defective within the general strict liability rule and its manufacturer or supplier held strictly liable because of the failure to provide an adequate warning." (*Persons* v. *Salomon North America, Inc., supra,* 217 Cal.App.3d at p. 174; see *Midgley* v. *S. S. Kresge Co.* (1976) 55 Cal.App.3d 67, 71 [127 Cal.Rptr. 217].) Whether a warning is adequate depends on several factors, among them "the normal expectations of the consumer as to how a product will perform, degrees of simplicity or complication in its operation or use, the nature and magnitude of the danger to which the user is exposed, the likelihood of injury, and the feasibility and beneficial effect of including a warning." (*Jackson* v. *Deft, Inc., supra,* 223 Cal.App.3d at p. 1320.) Whether the warning is adequate is usually a question of fact. (*Ibid.,* and authorities cited therein; see also *Billsborrow* v. *Dow Chemical, U.S.A.* (1988) 139 Misc.2d 488 [527 N.Y.S.2d 352, 355]; cf. *Temple* v. *Velcro USA, Inc.* (1983) 148 Cal.App.3d 1090, 1094-1095 [196 Cal.Rptr. 531].)

Defendants' claim concerning the adequacy of the warnings is based upon the instructions for use and health risk admonitions contained in the MSDS. The MSDS contain explicit instructions with regard to using the solvent with adequate ventilation and respiratory equipment. The MSDS also point out certain health hazards associated with unprotected use of the solvent, including dermatitis resulting from use without protective clothing and, if used without ventilation and protective respiratory equipment, respiratory tract irritation and central nervous system effects ranging from dizzyness to asphyxiation. Significantly, the MSDS do not mention the risk of vital organ damage resulting from unprotected use of the solvent.

 Imposition of liability for product defect requires a showing that the manufacturer did not adequately warn of a known or reasonably knowable

---

[5]As stated by the trial court, "A seller who gives *proper* warnings to his purchaser is not liable . . . ." (Italics added.)

risk. (*Anderson* v. *Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 997, 1000-1003 [281 Cal.Rptr. 528, 810 P.2d 549], hereafter cited as *Owens-Corning.*) This does not require the manufacturer to warn against every conceivable health problem associated with use of a product. However, the more severe the consequences from unprotected exposure, the greater the need to warn of significant health risks. "[I]t is necessary to weigh the degree of danger involved when determining whether a warning defect exists." (*Owens-Corning, supra,* 53 Cal.3d at p. 996; see *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 349 [157 Cal.Rptr. 142].) "[T]he adequacy of the warning must be commensurate with the risk of harm and level of potential of such harm . . . ." (*Billsborrow* v. *Dow Chemical, U.S.A., supra,* 527 N.Y.S.2d at p. 356.) In *Jackson* v. *Deft, Inc., supra,* 223 Cal.App.3d 1305, plaintiff sought recovery for asthma developed as a result of exposure to paint containing toluene diisocyanate. The appellate court reversed summary judgment in favor of defendants stating: "Reasonable people might disagree about whether any or all of the warnings . . . provided sufficient information *on the extent of risks and symptoms of overexposure to defendants' products.*" (*Id.* at p. 1320; italics added.)

Plaintiff's medical evidence tends to show liver failure can result from dermal and respiratory exposure to the solvent. However, neither plaintiff's nor defendants' medical evidence addresses the question whether plaintiff's injury is a result of inhalation of fumes or of dermal exposure, or of some combination of the two.

██ It cannot be disputed that liver damage is far more apt to have a devastating effect on one so afflicted than is dermatitis, as to which the MSDS do warn. Since, for our purposes, defendants are assumed to have known of this devastating potential (see fn. 4, *ante,* p. 110) yet failed to warn against it, defendants have not shown the warnings provided in the MSDS are adequate as a matter of law.

### III

██ Finally, defendants contend plaintiff so grossly misused their product that they are relieved of liability for any injury caused by exposure to the solvent. Defendants argue that if plaintiff had used the solvent with proper respiratory equipment and impermeable protective clothing as directed in the MSDS, he would have suffered no injury.

Given the established facts of plaintiff's misuse, defendants' claim cannot be lightly dismissed. Manufacturers have a right to expect consumers will use the product consistent with the instructions provided. (See *Groll* v. *Shell*

*Oil Co.* (1983) 148 Cal.App.3d 444, 448 [196 Cal.Rptr. 52]; *Oakes* v. *E. I. Du Pont de Nemours & Co., Inc.* (1969) 272 Cal.App.2d 645, 649 [77 Cal.Rptr. 709], hereafter cited as *Oakes.*) However the degree of misuse which will absolve a defendant is inextricably interwoven with the adequacy of the warning provided.

For example, Union's MSDS warned against dermal contact, advising such exposure might cause "skin irritation upon prolonged or repeated contact." The MSDS further suggested "[t]he use of impermeable gloves is advised to prevent skin irritation in sensitive individuals." Where the only health hazard associated with dermal contact is skin irritation in sensitive individuals, we cannot say as a matter of law that failure to use protective gear is a "gross misuse" of a product. To the contrary, given the tepid admonitions contained in the MSDS, it is not unreasonable to suppose many users of the solvent would disregard the advisory to use protective clothing unless and until skin irritation actually developed. (Cf. *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 733 [144 Cal.Rptr. 380, 575 P.2d 1162] ["[T]he manufacturer is not deemed responsible when injury results from an *unforeseeable* use of its product."] (Italics added.).) On the other hand, had defendants warned against irreversible damage to vital organs as a possible result of dermal exposure, it is reasonable to believe plaintiff and his employer might have taken the advisory more seriously. "Adequate warning[s] could have actuated a policy in handling [the product] which would have prevented the [injury]." (*Shell Oil Co.* v. *Gutierrez* (1978) 119 Ariz. 426 [581 P.2d 271, 280].)

Defendants rely on *Oakes, supra,* 272 Cal.App.2d 645, for the proposition the failure to use a product in the manner prescribed operates to bar liability. In *Oakes,* plaintiff used defendant's weed-killing spray products containing ingredients later shown to be dangerous to some individuals. The holding of *Oakes,* subsequently reaffirmed in *Owens-Corning, supra,* 53 Cal.3d 987, is that a manufacturer cannot be held liable for failure to warn unless the manufacturer knew or should have known of the risk or danger involved. (272 Cal.App.2d at pp. 651-652.) Since plaintiff's complaint did not allege that defendant knew or should have known of the possible deleterious effect of the use of the product upon some individuals, the order sustaining defendant's demurrer was upheld. (*Ibid.*)

The plaintiff in *Oakes* argued that a warning "which does not warn of the extent of injury possible if its cautionary advice is not followed is an inadequate warning, and thus no warning at all." Under the facts in *Oakes,* plaintiff's position was "that a warning that 'irritation' may result from contact with or inhalation of the product does not insulate the manufacturer

from liability where the result of such contact or inhalation is more severe than just 'irritation.' " Given that the *Oakes* court had found plaintiff's complaint fatally defective in other respects, the court dismissed this contention, stating, "We do not reach that question on this appeal." (272 Cal.App.2d at pp. 649-650, fn. omitted.) Obviously, defendants' reliance on *Oakes* is misplaced.

Finally, the plaintiff here is not alleging, as was plaintiff in *Oakes*, that he suffered an injury different in degree from that warned against, i.e., plaintiff is not complaining his skin was more irritated than might be expected in light of the warnings given. Instead, plaintiff claims his liver was irreparably damaged, an injury different in kind from and significantly greater than any consequence of dermal exposure against which the MSDS warned. Here, the issue of misuse is inherently implicated in the larger issue of adequacy of the warnings given. Where the warnings given are inadequate to apprise of the dangers associated with a product, the manufacturer cannot escape liability by asserting perfect compliance with instructions would have prevented the injury. (*Ferebee* v. *Chevron Chemical Co.* (D.D.C. 1982) 552 F.Supp. 1293, 1304-1305.) The uncompensated consequences which plaintiff must bear for failure to comply with instructions for use should at least be loosely commensurate with those against which warning was given, that is, they should be more closely congruent than are skin irritation and permanent liver damage.

The judgment is reversed. Plaintiff is to recover costs on appeal.

Sims, J., and Davis, J., concurred.

A petition for a rehearing was denied April 6, 1993, and respondents' petition for review by the Supreme Court was denied June 24, 1993. Panelli, J., was of the opinion that the petition should be granted.